# United States District Court
# District of Massachusetts

STEVEN J. KELLEY,
    as Trustee of CC Realty Trust,
        Plaintiff,

v.                              CIVIL ACTION NO. 2005-10602-RBC[1]

VERMONT MUTUAL INSURANCE COMPANY,
    Defendant.

## *MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND TO REMAND (#7)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On February 23, 2005, plaintiff Steven J. Kelley, as Trustee of CC Realty Trust (hereinafter "CC"), filed a complaint against defendant Vermont Mutual Insurance Company (hereinafter "Vermont Mutual") alleging two claims: breach of contract and violation of Massachusetts General Laws chapter 93A. One month later, on or about March 23, 2005, Vermont Mutual filed its answer

---

[1] With the parties' consent this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. §636(c).

to the complaint and removed the case to the United States District Court for the District of Massachusetts on the basis of diversity of citizenship between the parties.

On August 3, 2005, CC filed a motion to amend the complaint and to remand. (#7) Specifically, the plaintiff seeks leave to add a defendant, C&S Insurance Agency, Inc. (hereinafter "C&S"), to the complaint, to add a negligent misrepresentation against C&S, to add negligence claims against Vermont Mutual and C&S, to add C&S to the chapter 93A claim and to increase the damages claimed. If the motion to amend is allowed, CC requests that the case be remanded to the state court given that the addition of C&S as a defendant would destroy diversity. On the same date, August 3, 2005, Vermont Mutual filed its opposition to the motion to amend and remand.(#8)[2] With CC's reply (#11) having been filed on August 18, 2005, the motion to amend and remand is poised for decision.

## II. Facts

---

[2] Although it seems odd that the motion and the opposition would be filed on the same day, Vermont Mutual indicates in its opposition that defense counsel had received a copy of CC's proposed motion to amend and remand as well as the amended complaint by e-mail on June 24, 2005, and by regular mail on or about July 19, 2005. (Defendant, Vermont Mutual Insurance Company's Opposition #8 at 2) In addition, plaintiff's counsel had advised defendant's counsel of his intent to file the papers on August 3, 2005. Obviously Vermont Mutual had ample notice and opportunity to prepare its opposition in advance.

The facts as alleged in the proposed amended complaint are as follows. CC is a trust duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business in Stoughton, Massachusetts. (#7, Exh. A ¶1)  On or about January 28, 2003, CC purchased real property located at 17 Pearl Street and 733-735 Washington Street in Stoughton (the "Property") and a business owner's insurance policy (the "Policy") for that Property. (#7, Exh. A ¶¶8, 9)  The insurance policy was obtained from C&S, an entity which upon information and belief was an authorized agent of Vermont Mutual acting within the scope of its agency relationship. (#7, Exh. A ¶4) C&S, the defendant to be added, is a for-profit Massachusetts corporation with a principal place of business in Mansfield, Massachusetts. (#7, Exh. A ¶3) Vermont Mutual is a duly constituted insurance company with a principal place of business in Montpelier, Vermont. (#7, Exh. A ¶2)

Richard Fitzgerald ("Fitzgerald") was an employee and/or agent of C&S working within the scope of his employment and/or agency. (#7, Exh. A ¶13) According to CC, Fitzgerald advised its trustee that the insurance policy was a replacement cost policy, and that the total cost of replacing the buildings on the Property (subject to deductions not relevant in the instant action) would be covered under the Policy. (#7, Exh. A ¶10)  Shortly after the sale of the Policy,

Fitzgerald valued the building located on the Property at $425,000 and inserted that value onto an insurance form without consulting or conferring with CC. (#7, Exh. A ¶11) According to Fitzgerald, he intended this amount to be a temporary estimate, as he expected that Vermont Mutual would have a licensed real estate appraiser determine the true value of the building on the Property. (#7, Exh. A ¶11)

On March 2, 2003, CC's building on the Property was completely destroyed by fire. (#7, Exh. A ¶14) CC had not seen or received a copy of the Policy before the fire on March 2nd. (#7, Exh. A ¶15) Vermont Mutual has paid CC the value amount entered on the insurance form by Fitzgerald, i.e., approximately $425,000, although it has cost CC more than $1 million to replace the destroyed building on the Property. (#7, Exh. A ¶¶16, 17) CC has made a written demand upon Vermont Mutual for additional monies, but Vermont Mutual has refused to honor the demand, taking the position that it has fulfilled all of its obligations to CC under the Policy. (#7, Exh. A ¶18) CC claims that, as a result of Vermont Mutual's refusal, it has suffered actual losses in excess of $575,000. (#7, Exh. A ¶19)

### *III. The Law*

The parties agree that Title 28 U.S.C. §1447(e) is controlling. That statute, which authorizes the Court to exercise its discretion in determining whether to permit or deny joinder of nondiverse parties, provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court." 28 U.S.C. §1447(e). The permissive language of §1447(e) makes clear that Congress granted the courts broad discretionary power to permit or deny joinder, even though the decision could divest the court of its jurisdiction and force a remand to state court.

A court's decision under §1447(e) does not depend on whether the nondiverse defendant is classified as an indispensable or dispensable party as defined by the Fed. R. Civ. P. 19. Indeed, "[v]irtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be 'equitable' instead of being based on whether a party is indispensable." *Irizarry v. Marine Powers Intl.,* 153 F.R.D. 12, 14 (D.P.R., 1994); *see also Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668, 673-675 (1 Cir., 1994); *Hensgens v. Deere & Co.,* 833 F.2d 1179 (5 Cir., 1987); *St. Louis Trade Diverters v. Construction State,* 738 F. Supp.

1269, 1271 (E.D.Mo., 1990); *Righetti v. Shell Oil,* 711 F. Supp. 531 (N.D.Cal., 1989); *Heininger v. Wecare Distributors, Inc.,* 706 F. Supp. 860, 861 (S.D.Fla., 1989). However, when the party subject to joinder is classified as dispensable, "the district court has the options, pursuant to §1447(e), of denying joinder and continuing its jurisdiction over the case, or permitting joinder and remanding the case to state court." *Casas Office Machines,* 42 F.3d at 675, *citing Yniques v. Cabral*, 985 F.2d 1031, 1034 (9 Cir., 1993). A court does not have the option to permit joinder of a nondiverse defendant and retain its jurisdiction over the case once diversity has been destroyed. *Casas Office Machines,* 42 F.3d at 675.

In circumstances where joinder would destroy diversity and force a remand, a fact specific analysis must be undertaken. The Court "'should scrutinize that amendment more closely than an ordinary amendment' by considering equitable factors 'to balance the defendant's interest in maintaining the federal forum with the competing interests in not having parallel lawsuits.'" *Schrepfer v. Framatome Connectors USA, Inc.,* 115 F. Supp.2d 182, 186 (D. N.H., 1999)(*quoting Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5 Cir.,

1987)³(describing factors that district courts may consider in deciding whether or not to permit the addition of dispensable nondiverse parties)); *Irizarry*, 153 F.R.D. at 14. The primary focus is whether "permitting joinder [under §1447(e)] will comport with principles of fundamental fairness." *Briarpatch Ltd., L.P. v. Pate,* 81 F. Supp.2d 509, 515 (S.D.N.Y., 2000)(citing to *Wyant v. National R.R. Passenger Corp.,* 881 F. Supp. 919, 921 (S.D.N.Y., 1995)). In making such a determination, a court will generally consider the following four factors: (1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiff's motivation in moving to amend. *See Soto v. Barnitt*, 2000 WL 1206603, *3 (S.D.N.Y., 2000)(citing *Briarpatch Ltd.,* 81 F. Supp.2d at 515).

While the First Circuit has not directly addressed the situation in which the plaintiff, after a case has been removed on diversity grounds, seeks to add a nondiverse defendant and thereby destroy diversity, it has cited the Fifth

---

³ The factors delineated in *Hensgens* are still considered relevant even though the case was decided before subsection (e) was added to §1447 in 1988. *See, e.g., Schrepfer v. Framatome Connectors USA, Inc.*, 115 F. Supp.2d 182, 186 (D.N.H., 1999); *Irizarry*, 153 F.R.D. 12; *Carter v Dover Corp., Rotary Lift Div.*, 753 F. Supp. 577, 579 (E.D. Pa., 1991)("Virtually every court to address the joinder question since the enactment of §1447(e) views the statute as...providing for a flexible, broad discretionary approach of the type prescribed in *Hensgens*"). The *Hensgens* factors have also been cited with approval by the First Circuit in *Casas Office Machines* as factors that may be considered in the Court's discretion on whether to allow joinder under §1447(e). *Casas Office Machines*, 42 F.3d at 675 n. 8.

Circuit's decision in the *Hensgens* case with approval. *Casas*, 42 F.3d at 675, n. 8. In *Hengens,* the Fifth Circuit wrote that:

> [J]ustice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. For example, the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted.

*Hensgens*, 833 F.2d at 1182.

The factors limned in the *Hensgens* case shall be applied in deciding the motion to amend now before the Court.

### IV. Discussion

CC contends that the *Hensgens* factors are non-exclusive and that a balancing of equities either applying the *Hensgens* factors or otherwise actually weigh in favor of allowing the addition of C&S as a defendant under §1447(e). Vermont Mutual, on the other hand, is of the view that its interest in maintaining a federal forum coupled with evidence of improper motivation on

the part of CC to destroy federal jurisdiction outweigh the plaintiff's competing interest in not having parallel lawsuits.  Consequently the defendant requests that the Court deny joinder under §1447(e), which action would effectively moot the motion for remand.

### A.  CC's Motivation in Moving to Amend the Complaint After Removal

In evaluating whether CC's motivation in moving to amend is primarily to defeat federal jurisdiction, the Court may consider the extent to which such a motivation is evinced through the circumstances of the case.  *Hensgens,* 833 F.2d at 1182; *Irizarry,* 153 F.R.D. at 15.  CC sets forth specific facts to support its assertion that there are legitimate reasons for the delay in seeking to add C&S as a defendant. (#11, pp. 3-4)  For example, it is noted that pursuant to the terms of the Policy it was required that CC file any complaint against Vermont Mutual arising out of the fire within two years of the event.  In fact, the initial complaint was filed approximately one week prior to that deadline when attempts to resolve the dispute short of litigation failed.  The statute of limitations on any torts claims against C&S is three years under Massachusetts law, Mass. Gen. L. c. 260, §2A, and four years on the Chapter 93A claim, Mass. Gen. L. c. 260, §5A.

The plaintiff also asserts that its relationship with C&S and Fitzgerald was significantly different than its relationship with Vermont Mutual. CC and Fitzgerald had done business for years with C&S having placed insurance on numerous properties for the plaintiff. Given this ongoing relationship, CC wanted to conduct some initial written discovery of Vermont Mutual before making a decision with respect to adding C&S as a defendant.[4] Although CC served Vermont Mutual with interrogatories along with the complaint, that attempt to get discovery was thwarted when the defendant removed the case to federal court on or about March 21, 2005. On April 15, 2005, the plaintiff made an informal request for documents to Fitzgerald. (#11, Exh. 2 ¶8)  CC sent a letter dated May 3, 2005[5], to the Court requesting that a Rule 26(f) conference be scheduled so that discovery could get underway. When no action had been taken on CC's request by August, 2005, the plaintiff filed the motion to amend.

---

[4] It should be also kept in mind that a claim cannot be brought unless "the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery." Rule 11(b)(3), Fed. R. Civ. P.

[5] This letter does not appear on the docket, but it is in fact in the case file. The problem seems to be that two letters from Attorney Mendillo have both been given the same docket number, #3, and only the other letter actually has been docketed.

Vermont Mutual contends that CC's action in failing to name the proposed defendant *ab initio* in and of itself is "evidence that the desire to divest this Court of jurisdiction is the motivation behind the present motion." (#8, p. 4) In support of its position the defendant relies on the decision in *O'Connor v. Automobile Ins. Co. of Hartford Connecticut,* 846 F. Supp. 39 (E.D. Tex., 1994) in which the Court denied the plaintiff's motion to add an insurance agent to an action already pending against an insurance company after the case had been removed to federal court. In *O'Connor,* the circumstances of the case suggested that the plaintiff's motivation was to divest the court of jurisdiction because the plaintiff could have easily named the proposed defendant from the outset since the plaintiff knew of the insurance agency's involvement at the time of filing the state court complaint, and offered no explanation for having failed to do so. *O'Connor,* 846 F. Supp. at 40. Vermont Mutual analogizes the facts in *O'Connor* to those in the case at hand because CC, too, knew C&S was the insurance agency that sold it the Policy at issue at the time of filing the state court complaint. (#8, p. 5)  As such, Vermont Mutual surmises that CC's attempt to add C&S is a tactical maneuver to divest the Court of jurisdiction, and thus evidences an improper motive.

The Court is not persuaded by the defendant's argument. Unlike the plaintiff in the *O'Connor* case, CC has proffered legitimate reasons for not naming C&S as a defendant in the initial complaint. These reasons undercut the suggestion that CC's motivation in filing the motion to amend was primarily to defeat jurisdiction. There simply is no factual predicate for finding an improper motive in this case or upon which to conclude that the decision to add C&S was a tactical maneuver deliberately orchestrated by CC to defeat federal jurisdiction after removal.

B. Delay or Dilatory Factors
in Bringing the Motion to Amend and Remand

The next equitable factor the Court may consider is whether CC has diligently sought this amendment. *Hensgens,* 833 F.2d at 1182. The plaintiff asserts that Vermont Mutual's removal of the case halted the discovery process, but that despite the absence of discovery responses from Vermont Mutual, "CC conducted additional legal and fact research-thereby developed a better theory of the case." (#11, p. 4) Vermont Mutual contends that since this case was removed before significant discovery occurred, and the motion to amend was filed shortly after removal, CC's timing in seeking this amendment is evidence of a dilatory tactic on the part of CC rather than as the result of newly

discovered facts.(#8, pp. 5-6)

The defendant cites various cases to support the proposition that the timing of the proposed amendment suggests dilatory tactics by CC. However, each case referenced merely addresses the issue of timing in relation to motivation as a potential factor, not as conclusive proof of improper motivation or dilatory actions on the part of the movant[6]. In addition, Vermont Mutual reiterates its previous argument with support from *O'Connor,* that "[CC] could have named [C&S] as a defendant in [CC's] original state court complaint." (#8, p. 8)

What the defendant seems to argue is that, in effect, any delay is suggestive of dilatory tactics.  That contention alone is simply not convincing. In this case the plaintiff attempted to undertake discovery immediately upon filing suit, albeit to no avail.  Moreover, CC points to case law that states "[t]he only delay that is relevant to joinder considerations…is that between the removal of the case and the plaintiff's motion for joinder and remand." *Hunt*

---

[6] *See, e.g., Mayes v. Rappaport,* 198 F.3d 457, 463 (4 Cir., 1999)("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts **should be wary** that the amendment sought is for the specific purpose of avoiding federal jurisdiction." (emphasis added)); *Sutton v. Hollywood Entertainment Corp.,* 181 F. Supp.2d 504 (D. Md., 2002)(finding timing of plaintiff's motion to amend **may suggest** plaintiff seeks to avoid federal jurisdiction); *Gum v. General Elec. Co.,* 5 F. Supp.2d 412, 414 (S.D.W.Va., 1998)("The proximity of removal and the motions to amend, with little intervening discovery, **suggests** the motions were filed as tactical maneuvers, rather than a result of newly discovered facts." (emphasis added)).

*v. Stryker Corp.,* 2004 WL 502186, *2 (S.D.N.Y. 2004); *Nazario v. Deere & Co.,* 295 F. Supp.2d 360, 365 (S.D.N.Y. 2003)(stating plaintiff's five month delay in bringing motion to amend after removal without any justification may be an improper delay). Here, CC moved to amend and remand less than five months after the case was removed. In that intervening time the plaintiff attempted to get the case on track and discovery commenced by writing to request that a Rule 26(f) be scheduled. It was only when no action was taken by the Court that the motion to amend was filed. On these facts, it cannot be found that CC delayed or engaged in dilatory tactics in filing the motion to amend.

C.  Prejudice/Injury to CC<br>if Amendment to Add C&S is Denied

Next the Court shall consider the prejudicial effect denying joinder would have on CC's claims, to wit, the extent of the possible danger posed by concurrent litigation in federal and state court to the plaintiff if the amendment is not allowed. *Hensgens,* 833 F.2d at 1182; *Schrepfer,* 115 F. Supp.2d at 186.

CC asseverates that if "forced to pursue its case against C&S separately from Vermont Mutual, then the inefficient use of judicial and CC's resources abounds." (#11, p. 7) The plaintiff cites several cases which support the proposition that parallel federal and state actions are generally not favored due

to judicial inefficiency and the danger of conflicting results. *Rodriguez by Rodriguez v. Abbott Laboratories,* 151 F.R.D. 529, 533 (S.D.N.Y., 1993)("[P]laintiff would be unfairly prejudiced by having to litigate in two different forums. Indeed such litigation could result in unnecessary expense and conflicting results."); *Morze v. Southland Corp.,* 816 F. Supp. 369 (E.D. Pa., 1993)(granting motion to remand, where case would be consolidated with another state court action involving a nondiverse defendant, in order to promote judicial efficiency).

Vermont Mutual asserts that the goals of judicial efficiency and comity in results alone are not enough to justify permitting a joinder that defeats diversity. (#8, p. 6)  However, in support of this argument, Vermont Mutual relies on a First Circuit case, *Gonzales v. Cruz,* 926 F.2d 1 (1 Cir., 1991), which only speaks to situations where there are already concurrent state cases and the federal case is governed by state law. In the instant case, CC has not filed a separate state claim against C&S, but is attempting to join that entity as a party in the existing federal action. Thus, there are not concurrent federal and state cases already pending.

CC does not contend that judicial efficiency and comity alone are enough

to justify joinder and remand under §1447(e). Rather, the plaintiff observes that the denial of joinder will result in prejudice to CC by having two separate defendants each of whom may use the "empty chair" defense. (#11, p. 7)  CC points to Vermont Mutual's Twenty-Fourth and Twenty-Fifth Affirmative Defenses in which the defendant alleges that the alleged damages were caused by third parties for whose conduct Vermont Mutual is not legally responsible. (#11, p. 7).

Further, CC argues it would be "severely prejudiced from having to prosecute two separate actions on the same basic set of facts and run the risk of inconsistent outcomes, particularly one in which a federal jury holds the absent state court defendant liable, while the state court jury considers the absent federal court defendant liable." (#11, p. 7)  Such an outcome, according to the plaintiff, would be "grossly unjust and inconsistent with the spirit of both Rule 15(a) and 28 U.S.C. §1447(e)." (#11, p. 8 *citing Massaro v. Bard Access Systems, Inc.,* 209 F.R.D. 363, 369 (E.D. Pa., 2002)(granting joinder and remand where plaintiff's "motivation is to avoid the burden of prosecuting two claims arising from the same set of facts in two separate forums, particularly in light of the fact that each defendant, in separate forums, will likely point to the

proverbial empty chair of the other defendant as the more culpable party.")).

The plaintiff's position is compelling. Consideration of this equitable factor weighs in favor of granting CC's proposed amendment.

### D. Other Factors Bearing On The Equities

In addition to the factors already discussed, when balancing Vermont Mutual's interest in maintaining a federal forum and CC's interest in avoiding the danger of inconsistent results in parallel forums, the Court may also consider any other factors bearing on the equities. *Hensgens,* 833 F.2d at 1182. For instance, although the defendant claims it will suffer prejudice from a remand (#8, p. 7), the plaintiff aptly points out that Vermont Mutual fails to identify any concrete prejudicial effect it may in fact suffer. (#11, p. 5) While Vermont Mutual has an interest in defending this action in federal court, for the purpose of determining whether a remand would be equitable, there appears to be no tangible prejudice to the defendant that would result from remand alone which would warrant denying CC's motion. *See Nazario,* 295 F. Supp.2d at 363.

### E. Balancing The Equitable Factors

Balancing all of these considerations, the equitable factors weigh in favor of allowing CC's motion to join C&S as a defendant. CC has offered legitimate reasons for the delay in bringing the proposed amendment that contradict an improper motivation. In addition, the timing alone is not sufficient to allow the Court to conclude that this was a dilatory tactic by CC for the sole purpose of divesting the Court of jurisdiction. CC will likely face significant prejudice if forced to pursue bring separate claims against Vermont Mutual and C&S. Lastly, Vermont Mutual has failed to articulate any clear prejudice that it may suffer if forced to try this case in state court.

### V. Conclusion and Order

For the reasons stated, it is ORDERED that the Plaintiff's Motion To Amend The Complaint And To Remand (#7) be, and the same hereby is,

ALLOWED.  Judgment shall enter remanding this case to the state court.

/s/ Robert B. Collings
ROBERT B. COLLINGS
United States Magistrate Judge

December 15, 2005.